COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Ortiz and Friedman

ROBERT BURTON WEISENBECK

v.      Record No. 1277-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 26, 2023

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Steven C. Frucci, Judge

(S. Mario Lorello; Zoby & Broccoletti, P.C., on brief), for appellant.

(Jason S. Miyares, Attorney General; Victoria Johnson, Assistant
Attorney General, on brief), for appellee.

Robert Burton Weisenbeck pleaded guilty to indecent liberties with a child by a person in

a custodial or supervisory relationship, in violation of Code § 18.2-370.1(A)(vi). Weisenbeck

argues that the circuit court abused its discretion by sentencing him to the statutory maximum

sentence of five years' imprisonment and denying his motion to reconsider based on mitigating

evidence. After examining the briefs and record in this case, the panel unanimously holds that

oral argument is unnecessary. Because the record illustrates that the circuit court did not abuse

its discretion in sentencing Weisenbeck, this case is wholly without merit. Code

§ 17.1-403(ii)(a); Rule 5A:27(a). Accordingly, we affirm.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party." *Poole v. Commonwealth*, 73

Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

standard requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

In December 2021, a grand jury indicted Weisenbeck for indecent liberties with a child by a custodian. Weisenbeck pleaded guilty to that charge in March 2022 without a written plea agreement.[1] He acknowledged that he had discussed the sentencing guidelines with his attorney and expressed his understanding that the circuit court was not required to follow those guidelines and could sentence him to up to five years' imprisonment—the maximum sentence under the statute. The parties stipulated that, had the case gone to trial, the Commonwealth would have proved that Weisenbeck hosted a female foreign exchange student in June and July 2016. One day, while Weisenbeck was driving the victim, Weisenbeck "stopped the vehicle and placed his hands over her clothes and manipulated [her] 'clitoral area[]' . . . for around [five] minutes" before driving home. In the following weeks, Weisenbeck continued to touch the victim "under the clothes on her vagina" while driving her home. He also "perform[ed] oral sex on" her in the home.

The probation officer prepared a presentence report showing that Weisenbeck had no prior criminal history. The probation officer also completed sentencing guidelines and recommended a sentencing range of one day to three months. A clinical psychologist completed a psychosexual evaluation and concluded that Weisenbeck was at below average risk to reoffend based on his low risk assessment score. The report noted that Weisenbeck was voluntarily

---

[1] No transcript of the guilty plea hearing has been provided. We rely on the guilty plea questionnaire that Weisenbeck completed and signed.

participating in sex offender treatment from Alana Hollings, a psychiatrist and certified sex offender treatment provider. The report recommended that he continue such treatment.

The victim appeared at the sentencing hearing and read her victim impact statement. She testified that she came to the United States in the summer of 2016 as a high school foreign exchange student from Germany when Weisenbeck assaulted her. Weisenbeck was her host father for the exchange program. The victim testified that she was in a very vulnerable position and relied on her host family for all her basic and emotional needs. Weisenbeck took advantage of that vulnerability, emotionally manipulated her, and "blurred the lines" in their relationship as he "increasingly forced more and more of sexuality" on her. When she tried to set boundaries, "[Weisenbeck] would make [her] feel . . . guilty for hurting his feelings" and reminded her "of all of the things . . . he did for [her]." As a result, she developed "severe PTSD symptoms," became depressed, had panic attacks when people came near her or when watching certain scenes on television or at the theater, and suffered "intense nightmares" that she "woke up from crying, shaking, and scared." The victim told the court that she was "too ashamed and scared" to report the sexual abuse for a long time before finally reporting it to a friend. Her academic performance suffered when she returned to Germany, and she expressed concern that her PTSD would interfere with her future career. She testified that Weisenbeck damaged her ability to maintain intimate relationships and enforce boundaries. She also shared with the court that although she had previously told Weisenbeck "how severely he has hurt [her]," he never apologized to her. Finally, she expressed concern that he would abuse other children given the chance.

The defense argued in mitigation that Weisenbeck had no prior criminal history and had otherwise lived a successful and productive life. In support of this, Weisenbeck provided the circuit court with a packet containing (1) Weisenbeck's educational degree and certificates;

(2) his curriculum vitae; (3) a treatment letter from Dr. Hollings indicating that Weisenbeck had attended five therapy sessions and was committed to improvement; (4) 18 character letters from Weisenbeck's friends and family; (5) photographs of Weisenbeck with his family; and (6) a letter written by Weisenbeck expressing remorse for his crime. Weisenbeck argued that the court should not impose any additional jail time beyond the 27 days he had already served. He emphasized (1) his long career as a teacher, from which he resigned after his arrest, (2) his decision to plead guilty, (3) the psychosexual evaluator's conclusion that he was a below average risk to reoffend, (4) his decision to voluntarily seek sex offender treatment, (5) his family and community support, (6) the collateral consequences of a first felony conviction, and (7) his good behavior while on bond. The Commonwealth did not request a specific sentence. Weisenbeck apologized and expressed remorse during his allocution.

The circuit court sentenced Weisenbeck to the maximum sentence of five years' imprisonment. The court found that, as mitigation, Weisenbeck had accepted responsibility for his crime. It further found that Weisenbeck had no criminal record. The court also noted Weisenbeck's solid family structure but questioned the mitigating effect of that structure considering it did not deter Weisenbeck from committing the crime.

After discussing the mitigation evidence, the court found that the aggravation in this case was "overwhelming." Specifically, the court considered as aggravating evidence that Weisenbeck took advantage of a minor who was in a foreign country isolated from her own support structure. The court relied heavily on the victim's impact testimony. Specifically, it found that Weisenbeck took advantage of the trust the victim had in him and violated that trust. The court also considered the adverse effects of Weisenbeck's crime on the victim—her shame, severe PTSD, and need for therapy. The circuit court concluded, "I don't know that I can think

- 4 -

of a worse set of aggravating factors in this case than this," and ultimately sentenced Weisenbeck to five years.

Weisenbeck moved for reconsideration of his sentence under Code § 19.2-303. He argued that the circuit court did not adequately consider his mitigation evidence, specifically that he was a low risk to reoffend and that he voluntarily began sex offender treatment. He also argued that there were insufficient aggravating factors to justify the maximum sentence because the victim was post-pubescent and there was no evidence of physical force or verbal threat. The circuit court denied the motion to reconsider by form order without further explanation. Weisenbeck appeals.

## ANALYSIS

### I. Standard of Review

Weisenbeck alleges the circuit court erred in sentencing and in denying his motion to reconsider, both of which are reviewed for abuse of discretion.

"We review the [circuit] court's sentence for abuse of discretion." *Fazili v. Commonwealth*, 71 Va. App. 239, 248 (2019) (alteration in original) (quoting *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011)). We also review a denial of a motion to reconsider under an abuse of discretion standard. *Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013).

A circuit court abuses its discretion when it fails to consider a relevant factor that should have been given significant weight, gives significant weight to an irrelevant or improper factor, or commits a clear error in judgment in weighing all proper factors. *Barrow v. Commonwealth*, 73 Va. App. 149, 153 (2021).

### II. Sentencing

"If a sentence imposed is within the statutory limits fixed by the legislature, the assumption is that the sentence will not be disturbed on appeal." *Bassett v. Commonwealth*, 13 Va. App. 580,

582 (1992). This is the extent of our substantive sentencing review "[a]bsent an alleged statutory or constitutional violation." *Taylor v. Commonwealth*, 77 Va. App. 149, 177 (2023) (alteration in original) (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016)). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face. . . . Such decisions—if within the lawful boundaries of applicable sentencing statutes and constitutional limitations—are vested in the sound discretion of trial judges, not appellate judges." *Minh Duy Du*, 292 Va. at 563.

Here, the circuit court sentenced Weisenbeck to the statutory maximum sentence set by the General Assembly. *See* Code §§ 18.2-10(f), -370.1(A). Accordingly, Weisenbeck's sentence "was within the statutory range, and our task is complete." *See Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018). Weisenbeck fails to allege any statutory or constitutional violation, and therefore this assignment of error is without merit.

### III. Motion for Reconsideration

Next, Weisenbeck challenges the circuit court's denial of his motion for reconsideration. In this case, Weisenbeck's motion is governed by statute. We review issues of statutory interpretation de novo, seeking "to ascertain and give effect to legislative intent" derived "from the words employed in the statute." *Botkin v. Commonwealth*, 296 Va. 309, 314 (2018) (internal citations omitted).

Code § 19.2-303 provides that the circuit court, within specified time limits, "may . . . suspend or otherwise modify the unserved portion of" a sentence "if it appears compatible with the public interest and there are circumstances in mitigation of the offense." The statute does not define mitigating circumstances or the public interest, but we have defined mitigating circumstances for purposes of Code § 19.2-303 to include "'[e]vidence of a good previous record, and extenuating circumstances tending to explain, but not excuse, the commission of' the

crime." *Wilson v. Commonwealth*, 54 Va. App. 631, 641 (2009) (alteration in original) (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)).

The circuit court must consider mitigating evidence. *Murphy v. Commonwealth*, 246 Va. 136, 142 (1993) (citing *Correll v. Commonwealth*, 232 Va. 454, 468-69 (1987)). However, that does not mean that the circuit court must explicitly discuss all mitigating evidence. *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015) ("There is no general requirement that trial courts must state for the record the reasons underlying their decisions."). Additionally, the circuit court's ruling is entitled to a "'presumption . . . [of] correct[ness],' and this Court presumes that a circuit court knew and properly applied the law, '[a]bsent clear evidence to the contrary.'" *Morris v. George Mason Univ.*, 74 Va. App. 531, 546 (2022) (alterations in original) (quoting *Milam v. Milam*, 65 Va. App. 439, 467 (2015)). Weighing any mitigating evidence presented by a defendant falls within the circuit court's discretion. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000).

Although the circuit court's denial of Weisenbeck's reconsideration motion did not contain any explicit reasoning, we may not assume that the circuit court ignored Weisenbeck's arguments absent any evidence of the contrary. *See Morris*, 74 Va. App. at 546 ("The record does not demonstrate that the circuit court ignored the appellant's arguments, and the law does not permit us to assume that it did so."). Rather, absent contrary evidence in the record, the circuit court is presumed to have considered Weisenbeck's evidence and arguments. Here, other evidence in the record supports that presumption. The circuit court discussed some of Weisenbeck's mitigation evidence at the sentencing hearing, such as his lack of criminal record and family support. Although the circuit court did not explicitly discuss Dr. Hollings's letter or the psychosexual evaluation, the court referred to the mitigation evidence as "all of the things" in the packet Weisenbeck provided, which included Dr. Hollings's letter. There is no indication

that the circuit court failed to consider any of Weisenbeck's mitigation evidence; it simply found such evidence outweighed by aggravating factors. Such weighing is in the circuit court's discretion, and we decline Weisenbeck's invitation to reweigh the mitigating and aggravating evidence.

## IV. Modification

Finally, Weisenbeck argues that the circuit court abused its discretion by not considering whether a modification was in the public interest, arguing that the sentencing guidelines "are the clearest indicator of the public's interest in sentencing."[2] Again, although Code § 19.2-303 requires a circuit court to consider the public interest, it does not require the court to put its reasoning in writing. Absent evidence to the contrary, we presume that the circuit court correctly applied the law and concluded upon consideration that the public interest did not justify a sentence modification.

The "sentencing guidelines 'are discretionary, rather than mandatory.'" *Fazili*, 71 Va. App. at 248 (quoting *West v. Dir., Dep't of Corr.*, 273 Va. 56, 65 (2007)). "[T]he recommended sentencing ranges contained in these discretionary guidelines are not binding on the trial judge but, rather, are mere tools to be used by the judge in fixing an appropriate sentence within the limitations established by the statute governing punishment for the particular crime." *Luttrell v. Commonwealth*, 42 Va. App. 461, 465 (2004). By statute, a judge's failure to follow the sentencing guidelines "shall not be reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F). Reading the definition of "public interest" in

---

[2] Weisenbeck did not argue in his reconsideration motion that the public interest was best expressed by the sentencing guidelines. Nor did he make any arguments about the public interest separate from his mitigating evidence. Indeed, in quoting Code § 19.2-303 in his reconsideration motion, he provided the following emphasis: "if it appears compatible with the public interest and *there are circumstances in mitigation of the* [*offense*] . . . ." We will nonetheless address his argument.

Code § 19.2-303 to be subsumed into the sentencing guidelines and making a circuit court's public interest determination reviewable on appeal would, at minimum, create tension with Code § 19.2-298.01(F). Moreover, the circuit court explained in its original sentencing decision why it deviated from the sentencing guidelines. Accordingly, the circuit court did not abuse its discretion by denying Weisenbeck's reconsideration motion.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*